SO ORDERED.

SIGNED this 27th day of July, 2012.



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

---

**Designated for on-line use and print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In Re:

**DONALD P. OSBORNE,**

                  **DEBTOR.**

**CARL B. DAVIS, Trustee,**

                  **PLAINTIFF,**

v.

**DONALD P. OSBORNE,**

                  **DEFENDANT.**

**CASE NO. 08-12350**
**CHAPTER 7**

**ADV. NO. 10-5033**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART THE TRUSTEE'S SECOND AMENDED COMPLAINT**
**FOR REVOCATION OF DISCHARGE**

Trial on the Trustee's Second Amended Complaint for Revocation of Discharge was held on May 29, 2012.[1]  The Plaintiff, Carl B. Davis, Chapter 7 Trustee (Trustee), appeared by Elizabeth A. Carson of Bruce, Bruce & Lehman, L.L.C.  The Defendant, Debtor Donald P. Osborne (Debtor), appeared *pro se*.  There were no other appearances. Having carefully considered the testimony, the exhibits, and the statements on behalf of the parties, the Court finds that Debtor's discharge should be revoked under 11 U.S.C. § 727(d)(1),[2] based upon commissions of acts specified in § 727(a)(4)(A).

**BACKGROUND FACTS.**

This Chapter 7 bankruptcy was filed by Debtor Donald P. Osborne *pro se* on September 17, 2008.  Debtor received a discharge on April 20, 2009.  The Trustee's Second Amended Complaint[3] is in three counts.  In Count I, the Trustee seeks to have Debtor's discharge revoked under § 727(d) based upon his failure to appear for a Rule 2004 examination on November 23, 2009; his failure to appear at hearings on January 19, 2010, and February 1, 2010, to show cause why he should not be held in contempt for failing to appear for the Rule 2004 examination; and his failure to pay a sanction of $500

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984.  Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (J).  There is no objection to venue or jurisdiction over the parties.

[2] Future references to title 11 in the text shall be to the section number only.

[3] Dkt. no. 71.

2

imposed by the Court. Count II prays for revocation of discharge under § 727(d)(1) based upon Debtor's failure to list real property interests in his Schedules, in violation of §§ 727(a)(4) and 727(a)(2). Count III prays for revocation of discharge under § 727(d)(1) for Debtor's failure to identify in his Schedules all assets and all creditors; his sale of property of the estate and failure to turn over the proceeds; his use of various persons and entities as his alter ego to buy, sell, and hold property; and his engaging in substantial business activities not disclosed in his Schedules or to the Trustee, in violation of §§ 727(a)(4) and 727(a)(2).

**FINDINGS OF FACT.**

Debtor is a single person who was born in 1943. For most of his adult life, Debtor has been engaged in the businesses of buying and selling real estate, buying and selling tractors and trailers, and over-the-road trucking. Generally, these businesses were conducted under the trade name of Don Osborne Enterprises. No formal business records were kept, and apparently no effort was made to separate his business and personal affairs. Although Debtor has filed tax returns, he has not paid any income taxes since 1970.

Debtor and Margie C. Osborne were married in 1969. For years, Margie Osborne and Lorraine O. Dawson, Debtor's mother, engaged in the business of property leasing, under the name Hays Partners. No formal business records of Hays Partners were introduced at trial. Although Debtor testified that he was not an owner but only served as a financial consultant or advisor to Hays Partners, the Court finds that the financial affairs

of Debtor, Margie Osborne, and Lorraine Dawson were not cleanly separated. For example, Debtor testified that a bank account in his name at Golden Belt Bank received deposits of funds from Hays Partners and made payments to or on behalf of Debtor. In addition, a federal income tax Form 1040C for Hays Partners, listing Debtor as the proprietor of Hays Partners, was filed with Debtor's 2006 federal tax return. Nevertheless, there is not sufficient evidence in this record for the Court to hold that property of Hays Partners should have been included in Debtor's schedules.

In 2004, two events occurred which prompted Debtor to begin to rearrange his financial affairs. First, the IRS questioned Debtor's tax returns for 2001 and 2002. Second, Debtor, who was "self insured" for vehicle liability purposes, was involved in a motor vehicle accident which resulted in personal injury to members of the Albert family, who subsequently sued him for damages. As to the tax liability, Debtor sought and obtained innocent spouse protection for his wife. Also, soon after the accident, Margie Osborne petitioned for a divorce, which was granted in December 2004. The parties agreed to a separation agreement under which Debtor retained his business, Don Osborne Enterprises, valued in the agreement at $785,000, and Margie retained Colorado real property valued at $500,000 and retirement accounts valued at $223,140.81. All debts since the date of separation, which was stated in the divorce documents to be September 1, 1994, were held to be Debtor's separate obligations. Debtor's testimony as to the basis

4

for the valuation of his business was neither consistent nor credible.[4]  According to Debtor, after the divorce, the operation of Debtor's, his wife's, and his mother's businesses did not change, except Debtor became the sole owner of Don Osborne Enterprises and he lost his one-half interest in the Colorado real property, which he quit-claim deeded to Margie Osborne.

Trial on the personal injury lawsuit filed by the Alberts against Debtor was held on September 2, 2008.  On September 17, 2008, Debtor filed his voluntary petition under Chapter 7.  On October 21, 2008, a journal entry of judgment for $1,176,386.04 was entered in favor of the plaintiffs and against Debtor and Don Osborne Enterprises, which were found to be one and the same.  Intervenor Columbia Insurance Company was granted a claim of subrogation in the amount of $137,600, with a right of indemnification from Debtor.  Debtor considers the personal injury litigation to be fraudulent.

Debtor's Statement of Financial Affairs, signed under penalty of perjury, contains answers to questions which are neither accurate nor complete.  In response to Question 1, Debtor reported he had no income from employment or the operation of a business from the beginning of the calender year to the date of filing, and no such income during the two years immediately preceding the calendar year in which the petition was filed.  Yet Debtor testified that he engaged in his businesses throughout his adult life, except for the period from the date of filing to the date of discharge, and he admitted having had income

---

[4] For example, Debtor testified that $471,000 of the value of the business was comprised of lines of credit available under 72 outstanding credit cards.

5

in 2006 and 2007 from the buying and selling of trucks and from hauling freight.  He stated that he did not include the income for the year in which the petition was filed because he had not done his taxes before filing and that he failed to state his gross income for the two prior years because it was not that important.

Debtor reported nothing in response to Question 10, "Other transfers," which requests information about non-ordinary-course transfers made within two years preceding the commencement of the case.  Yet Debtor testified that in 2006, Don Osborne Enterprises, which had been valued at $785,000 in December 2004 for the divorce case, liquidated some of its inventory and rolling stock.  His 2006 tax return reports gross receipts or sales of $45,431, and an inventory value at the end of the year of $31,300.  The only personal property Debtor reported on Schedule A was $600 in cash, $50 worth of clothing, and four vehicles, worth an aggregate of $3,500.  The inventory remaining at the end of 2006 was either liquidated before filing and not reported in response to Question 10, or held by Debtor on the date of filing and not included in his Schedules.

In response to Question 11, Debtor identified no closed financial accounts.  Yet Debtor testified that an account in the name of Donald P. Osborne at Golden Belt Bank was closed immediately before he filed his petition.

In response to Question 18, Debtor stated that he had engaged in the business of trucking under the name Don Osborne from January 1, 1969, to November 1, 2006.  But he testified that throughout his adult life, he has also engaged in buying and selling both real property, and trucks and trailers.

6

Debtor's Schedules are not accurate. Schedule A lists only Debtor's one-half interest in real property in Woodston, Kansas. But the record includes copies of three sheriffs' deeds by which Debtor acquired interests in three parcels of Texas property on August 19, 2008, shortly before this case was filed. Schedule A directs the reporting of "all real property in which the debtor has any legal, equitable, or future interest." Debtor testified that he did not include his interest in these Texas properties because he purchased them at a tax sale and his right to ownership was subject to the right of redemption of the record owners. But the Court questions the credibility of this reason. The directions on Schedule A as to interests to be included are clear. Debtor is an intelligent man, is licensed as a real estate broker in Colorado, and has bought and sold real estate all his adult life.

When Debtor filed for bankruptcy relief, he listed his mailing address as 1100 Fairway Drive, Hays, Kansas. The Hays property was purchased in 2001 to be a residence for Lorraine Dawson and Margie Osborne. Debtor's name was on the deed, but he quit-claimed his interest in 2004. The Trustee contends Debtor's conveyance was fraudulent,[5] but Debtor contends he never had an equitable interest in the property. The Hays property was not included in Schedule A, but the Trustee did not prove at trial that Debtor had an interest in it on the date of filing.

---

[5] *See* Complaint, Dkt. no. 1, in *Clark v. Osborne*, Adv. No. 10-5067.

7

The Trustee contends that Debtor also had interests in two tracts of real property in Plainville, Kansas, located at 605 NW 3rd Street and 2300 17 Road.[6] The Trustee's evidence of ownership presented at trial is a summary of real estate listings showing Don Osborne as owner of the 17 Road property and as "owner or contact" for the NW 3rd Street property. As to both properties, Debtor testified that he owned no interest and that the properties were owned by Margie Osborne and Lorraine Dawson through Hays Partners. The Court finds that the Trustee has failed to prove that Debtor had an interest in the Plainville properties.

Debtor's Schedule B, "Personal Property," does not include tools and four salvage vehicles which Debtor admits he owned on the date of filing. He testified the tools were not listed because they were exempt, but they were not claimed as exempt on Schedule C as originally filed or as later amended. As to the salvage vehicles, Debtor testified they were excluded because they had no book value, but acknowledged that he knew they had monetary value. On October 28, 2008, Debtor filed an amended Schedule C claiming three vehicles as exempt.

Debtor's Schedule E, "Creditors Holding Unsecured Priority Claims," lists five creditors: the U.S. Department of Transportation ($10,000); the Internal Revenue Service (approximately $79,000); the Alberts ($1.176 million judgment), Columbia Insurance ($137,600 subrogation claim); and Liberty Mutual ($29,938, arising from an altercation

---

[6] *See* Amended Complaint, Dkt. no. 24 in *Clark v. Osborne*, Adv. No. 10-5127.

with a woman in Texas).[7]  But Debtor testified that he had no intention of ever paying any of the listed unsecured claims.  In Debtor's opinion, one never pays a Department of Transportation fine because such fines are always set aside; the tax claims are null and void because of aging; and the personal injury judgment,  the related subrogation claim, and the Liberty Mutual claim are not his obligations because they are fraudulent.  There are no trade creditors or credit card debts listed on either Schedule E or Schedule F, "Creditors Holding Unsecured Nonpriority Claims."  Debtor testified that prepetition he had 72 credit card accounts, with $471,000 in available credit.  He testified he did not list them because he always paid such creditors within 30 days.  Debtor did not testify that there were no balances owed on the date of filing.

The Trustee's contention that Debtor refused to obey a lawful order of the Court concerns the Debtor's resistance to appearing for a Rule 2004 examination noticed by the Trustee.  On October 28, 2009, at the request of the Trustee, the Court entered an order requiring Debtor to appear for a Rule 2004 examination on November 17, 2009.  Debtor requested rescheduling because of a medical appointment, and the examination was rescheduled for November 23, 2009.  By letter to counsel for the Trustee dated November 18, 2009, Debtor stated he would not be appearing on November 23, 2009, for "the

---

[7] Schedule E has boxes to be checked to indicate why claims listed on the Schedule are entitled to priority, and Debtor checked boxes for "Extensions of credit in an involuntary case" and "Taxes and Certain Other Debts Owed to Governmental Units."  Apparently, he thought the personal injury judgment, the related subrogation claim, and the Liberty Mutual claim were somehow extensions of credit in an involuntary case, rather than the nonpriority unsecured claims they probably are.

9

purpose of derogatory statements," since in his view the case ended in April of 2009, when his discharge was granted.[8]  He also stated,

> If Judge Somers is unhappy with this, He may convene a hearing and I will take the stand and answer any questions other than the following:
>
> > A. Questions not germane to the issues before the court.
> > B. Issues not pertaining to me personally.
> > C. Issues related to hearsay evidence.  (Not admissible)

The Trustee responded by filing an Accusation in Contempt, which was noticed for hearing on December 10, 2009.  At that time, the Court entered an order directing Debtor to appear and show cause why he should not be held in contempt of Court.  The hearing on the show cause order was scheduled for January 19, 2010.  Debtor did not appear. Because of a question about the sufficiency of notice to the Debtor, the hearing was continued to February 1, 2010 at 1:30 p.m.  By letter dated February 1, 2010, sent by fax at 9:39 a.m., Debtor informed the Court as follows:

> I regret to inform you that I am unable to attend in person the hearing scheduled for today in Wichita.
>
> The problem is I am unable to raise the $1200.00 necessary to fund the trip (see attached)
>
> My financial situation in the sixteen months I have been in bankruptcy has deteriorated to the point where I may soon be receiving my mail at a federal facility located in Leavenworth Kansas.  My IRS debt has risen in this period from 75 thousand to over 100 thousand and bankruptcy does nothing to reduce/ eliminate any of this debt.

---

[8] Exh. A.

10

> I received no COLA increase from Social Security for 2010.
> The IRS is again in my face. I promised to submit an offer in
> compromise and was given a deadline of November 1, 2009
> to do so (see attached). I cannot according to the current rules
> submit an OIC while still in bankruptcy. As for any
> deposition to these "Contract Lawyers" I wish to remain silent
> pursuant to the fifth amendment.
>
> I pray to the court you will enforce my constitutional rights
> and work with these lawyers to provide the funding necessary
> to cover transportation and expenses.[9]

The Court found Debtor in contempt for failure to appear and ordered him to pay $500 to the Trustee as a sanction. As of the date of trial, the $500 had not been paid. Debtor appeared at proceedings in this case involving his ex-wife and his mother numerous times without having been provided funds for transportation and expenses. Debtor's Rule 2004 examination was ultimately conducted on July 27, 2010, in Wichita, Kansas.

Debtor completed two years of college, where his studies included accounting. He is intelligent and articulate, understands what he reads, and makes long-term plans. When testifying, he displayed a remarkable memory for details of past events, such as when, from whom, and for what amount property was bought and sold. But Debtor also displayed contempt for courts, attorneys, obligations which he believed were unjust as to him (or his ex-wife or mother), and actions of the Trustee in this case. Notwithstanding his intelligence and abilities, Debtor appears to have made no effort to understand what is required of a debtor in bankruptcy or to comply with a debtor's obligations. Debtor

---

[9] Exh. E.

11

displayed no interest in the legal basis for the relief sought by the Trustee in this action. Debtor's personal understanding of these matters is impervious to change based upon explanations of reality. For many years Debtor's view of the world and "off the books" method of conducting his business served him well, but when he incurred the obligations which led him to file for bankruptcy relief, his private world did not adapt to the resulting obligations.

## ANALYSIS.

### A. Revocation of discharge under § 727(d)(1).

A purpose of the Bankruptcy Code is to provide the honest, but unfortunate, debtor a fresh start.[10] "Congress described § 727's discharge provisions as 'the heart of the fresh start provisions of the bankruptcy law.'"[11] The availability of revocation of discharge in § 727(d) allows a debtor to receive a discharge early in the case while protecting the estate and creditors if one of the enumerated grounds for revocation arises.[12] The bankruptcy court must strictly construe the provisions on revocation of discharge and revoke a discharge only for reasons clearly stated in the Code.[13] The Trustee has the

---

[10] *Dalton v. Internal Revenue Service*, 77 F.3d 1297, 1300 (10th Cir.1996).

[11] *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir. 1993) (*quoting* H.R. Rep. No. 95-595, at 384 (1977)).

[12] *Morris v. Morris (In re Morris)*, 2008 WL 819296 at *3 (Bankr. D. Kan. 2008) (*citing* 6 *Collier on Bankruptcy*, ¶ 727.16[2] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 15th ed. rev. 2007)).

[13] *Id.*, (*citing Holder v. Bennett (In re Bennett)*, 126 B.R. 869, 873 (Bankr. N.D. Tex. 1991) and *Kansas State Bank and Trust Co. v. Vickers (In re Vickers)*, 577 F.2d 683, 686-87 (10th Cir. 1978) (stating: "One of the primary purposes of the Bankruptcy Act is the rehabilitation of an honest debtor by discharging his debts to afford him a fresh start in his economic life. Exceptions to this general policy

12

burden of proof to establish his revocation of discharge claim by a preponderance of the evidence.[14]

Subsection (1) of § 727(d) provides for revocation of discharge as follows:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if —
>
> > (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

The phrase "discharge was obtained through the fraud of the debtor" has been construed to refer to the behavior that would be sufficient for the denial of discharge under § 727(a)(2)-(5).[15]  In this case, the Trustee alleges Debtor committed the acts specified in §§ 727(a)(2) and (4), primarily based upon the omissions from and inaccuracies in Debtor's Statement of Financial Affairs and Schedules.  Debtor does not contest the Trustee's position that the omissions and inaccuracies on which the Trustee relies to establish fraud became known after the granting of his discharge.

**B.  Revocation of discharge under § 727(d)(1) based upon alleged fraud under § 727(a)(2)(A) is denied.**

Subsection (a)(2)(A) of § 727 provides that grounds for denial of discharge include "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate

---

should be strictly construed against an objecting creditor and in favor of the debtor's right of discharge.")).

[14] *Morris v. Wright (In re Wright)*, 371 B.R. 472, 479 (Bankr. D . Kan. 2007).

[15] *Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver)*, 367 B.R. 795, 805-06 (Bankr. D.N.M. 2007).

13

. . . , has transferred, removed, destroyed, mutilated, or concealed . . . — (A) property of the debtor, within one year before the date of the filing of the petition." The purpose of the subsection is stated by a commentator as follows:

> Based both on its wording and its history, Code § 727(a)(2) incorporates a portion of the law of fraudulent conveyances into the realm of discharge issues. The statute reinforces an affirmative prohibition against fraudulent transactions and other activities designed to injure creditors by denying access to potentially valuable assets. By its terms, this section establishes that the fair dealing necessary to qualify for a discharge includes refraining from actions intended to injure creditors, including the transfer, concealment or destruction of property.[16]

The Trustee has failed to prove that Debtor's discharge would have been denied under § 727(a)(2)(A) if all of the facts had been known in April 2009. At trial, rather than presenting evidence of fraudulent transfers, the Trustee litigated this case on the erroneous premise that the failure to reveal property and transactions in bankruptcy Statements of Affairs and Schedules constitutes concealment for purposes of § 727(a)(2)(A). The section of the Pretrial Order setting forth the Trustee's theory of recovery includes the statement that "[u]nder 11 U.S.C. 727(a)(2), the debtor did, with intent to hinder, delay or defraud creditors and an officer of the estate, conceal and refuse to disclose his interest in property."[17] The Trustee's Second Amended Complaint in Count II alleges violation of § 727(a)(2)(A) based upon Debtor's failure to list on

---

[16] 4 *Norton Bankruptcy L. & Prac.*, § 86.4 (3rd ed. 2012) (online database updated July 2012).

[17] Dkt. no. 77 at 4.

Schedule A his interests in the Texas properties he purchased at sheriffs' sales. Count III alleges violation of § 727(a)(2)(A) based upon Debtor's failure to identify in his Schedules all his assets and all his creditors; his sale of property of the estate and failure to turn over the proceeds; his use of other persons and entities as his alter egos to buy, sell, and hold property; and his engaging in substantial business activities not disclosed in his Schedules or to the Trustee. None of the activities alleged in Counts II or III would constitute fraudulent transfers of property.[18] At trial, the Trustee did not provide evidence from which the Court could conclude that Debtor made fraudulent dispositions of property within one year prior to filing of the petition.

Denial of discharge based upon concealment through omissions from the statements of financial affairs and schedules is covered by § 727(a)(4), not § 727(a)(2)(A). The Trustee's claim for revocation of discharge under § 727(d)(1) based upon fraud under § 727(a)(2)(A) is denied.

**C. Revocation of discharge under § 727(d)(1) based upon alleged fraud under § 727(a)(4)(A) is granted.**

Subsection (a)(4)(A) of § 727 provides that "[t]he court shall grant the debtor a discharge, unless — . . . (4) the debtor knowingly and fraudulently, in or in connection with the case — (A) made a false oath or account." "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information

---

[18] The Trustee did file two adversary complaints against Debtor, Margie Osborne, and Lorraine Dawson to recover fraudulent transfers of real property. (Adv. Nos. 10-5127 and 10-5167). These cases were settled without trial.

15

without having to conduct costly investigations."[19]  "In bankruptcy administration, the system will collapse if debtors are not forthcoming."[20]  Section 727(a)(4)(A), as well as other Code sections, has the purpose of making "certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.  The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction."[21]  "[A]n omission of assets from a Statement of Affairs or schedule may constitute a false oath under section 727(a)(4)(A)."[22]

In order to prevent a discharge under this provision, the Trustee "must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact."[23]  As found above, there is no dispute that Debtor made false entries under oath in his Statement of Financial Affairs and his Schedules.  Debtor (1) failed to report income from employment or the operation of a business from the beginning of the calendar year to the date of filing, and reported none of the gross amounts he received during the two years immediately preceding that

---

[19] *Davis v. Weddington (In re Weddington)*, 457 B.R. 102, 113 (Bankr. D. Kan. 2011).

[20] *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir. 1987).

[21] *Id*. at 110.

[22] *Job v. Calder (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990).

[23] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997).

16

calendar year; (2) failed to report non-ordinary-course transfers made within two years preceding commencement of the case; (3) failed to report a financial account he closed on the eve of filing; (4) omitted from his Schedule A interests in three parcels of Texas real property he purchased on August 19, 2008, shortly before this case was filed; and (5) did not include tools and four salvage vehicles on Schedule B or otherwise. Where, as in this case, it is undisputed that Debtor made incorrect entries on his Schedules and Statement of Financial Affairs and made them under oath, the crux of the dispute is whether the oaths were knowing and fraudulent, and relate to a material fact.[24]

Debtor acted knowingly. "A debtor acts knowingly if he or she acts deliberately and consciously."[25] Debtor displayed no problem with reading or understanding the bankruptcy forms. He testified that any fifth grader would know what to do. Debtor completed the forms himself, without the assistance of counsel. He did not testify that the entries were other than deliberate and conscious. Although Debtor filed an amended Schedule C in 2008 to change his claimed exemptions, he did not file any amendment to his Statement of Financial Affairs or Schedules in response to the filing of the complaint to revoke his discharge, and no additional amendments had been filed as of the trial date.[26]

---

[24] *Id.*

[25] *Weddington*, 457 B.R. at 112.

[26] On October 28, 2008, Debtor filed an amended Schedule C claiming three of the four vehicles listed on Schedule B as exempt.

17

The Court finds that Debtor acted with fraudulent intent. "'The problem in ascertaining whether a debtor acted with fraudulent intent is difficult because, ordinarily, the debtor will be the only person able to testify directly concerning his intent and he is unlikely to state that his intent was fraudulent. Therefore, fraudulent intent may be deduced from the facts and circumstances of a case.'"[27] It is not proper to deny discharge based upon a false statement due to mistake or inadvertence.[28] But "'reckless indifference to the truth has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A).'"[29]

The Court concludes that Debtor acted with indifference to his obligation as a debtor to truthfully provide the information required in his Statement of Financial Affairs and Schedules. Throughout his testimony, Debtor expressed disdain for lawyers, the bankruptcy process, and the individuals charged with its administration. Although intelligent, experienced in business, and steadfastly opposed to consulting with an attorney, Debtor displayed a reckless lack of interest in acquainting himself with what was required of a debtor to gain the benefit of the Chapter 7 discharge which he sought.

---

[27] *United States Trustee v. Garland (In re Garland)*, 417 B.R. 805, 815 (10th Cir. BAP 2009) (*quoting Job v. Calder*, 907 F.2d at 955-56).

[28] *Brown*, 108 F.3d at 1294.

[29] *Garland*, 417 B.R. at 815 (*quoting Cadle Co. v. King (In re King*, 272 B.R. 281, 302 (Bankr. N.D. Okla. 2002)). *See also Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir. 1986), *rev'd on other grounds by Grogan v. Garner*, 498 U.S. 279 (1991) (under § 523(a)(2)(B), the requisite intent to deceive "may be inferred from a sufficiently reckless disregard of the accuracy of the facts"); *Tully*, 818 F.2d at 112 (debtor "exhibited the 'reckless indifference to the truth,' which has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)").

18

When Debtor's "off the books" method of conducting his businesses collided with substantial debts, Debtor sought bankruptcy protection but recklessly continued to operate as if he were exempt from the bankruptcy rules and regulations applicable to others, or at least, if not completely exempt, as if he were entitled to pick and choose those which he found acceptable and those which he did not.

The next question is whether Debtor's omissions and false statements were material. In determining materiality, the question is not "merely the value of the omitted assets or whether the omission was detrimental to creditors. . . . [A] discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition."[30] The Tenth Circuit Bankruptcy Appellate Panel thoroughly examined the meaning of materiality in a 2010 decision as follows:

> "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." Moreover, materiality is not defeated by the fact that the undisclosed property interests are determined to be without value. This is because "[b]ankruptcy is a serious matter and when one chooses to avail himself of the benefits of Chapter 7 relief he assumes certain responsibilities, the foremost being to fully disclose his assets and to cooperate fully with the trustee." As such, debtors have an "uncompromising duty to disclose whatever ownership interest [they hold] in property," and they must

---

[30] 6 *Collier on Bankruptcy* ¶ 727.04[1][b] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2012).

> "disclose everything," rather than "make decisions about what
> they deem important enough for parties in interest to know."[31]

In this case, Debtor disclosed in his Schedules what he thought the parties in interest should know, not what the statutes required. At the outset, the Trustee was not informed that Debtor had recently received income from his businesses, that business assets had been liquidated within the two years before filing, that a bank account had been closed on the eve of filing, and that Debtor owned recently purchased interests in Texas real property. Although, because of the small values involved, no single omission standing alone was of great significance, the cumulative effect of the omissions was material. While the Trustee presented no direct evidence of materiality, such as the costs incurred in ferreting out what was omitted from Debtor's bankruptcy filings, the Court's examination of the admitted exhibits in this case, review of the dockets in the main case and the adversary cases, and familiarity with these proceedings convinces the Court that if Debtor's filings had been complete and accurate, or even if Debtor had cooperated once the deficiencies were identified, the course of these proceedings would have been smoother and the work of the Trustee significantly reduced. When coupled with Debtor's cavalier indifference and his on-going pattern of disdain for full disclosure, the deficiencies in Debtor's filings required the Trustee to "engage in a laborious tug-of-war to drag the simple truth into the glare of daylight."[32]

---

[31] *Garland*, 417 B.R. at 814-15 (footnotes omitted).

[32] *Tully*, 818 F.2d at 110.

20

The Court therefore concludes that Debtor's discharge should be revoked under § 727(d)(1). The omissions and inaccuracies constitute grounds for denial of discharge under § 727(a)(2)(A) but were not known to the Trustee when the discharge was granted. Therefore the discharge was obtained through Debtor's fraud for purposes of § 727(d)(1) and must be revoked.

### D. Revocation of discharge under § 727(d)(3) is denied.

The Trustee in Count I of the Second Amended Complaint prays for revocation of discharge under § 727(d)(3), which allows for the revocation of a discharge if the debtor committed an act specified in § 727(a)(6). That subsection states that the court shall grant the debtor a discharge unless "the debtor has refused, in the case — (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify." In the Tenth Circuit, a party objecting to discharge under § 727(a)(6)(A) "must demonstrate that 'the debtor received the order in question and failed to comply with its terms.' The debtor then bears the burden of explaining the non-compliance. Ultimately, the court may not deny discharge under § 727(a)(6)(A) unless it finds that the debtor's non-compliance was willful."[33] The requirement of willfulness is based upon the use of the term "refused" in the statute; refusal, as opposed to simple failure, requires intent.[34] The willful, or intentional, failure-to-comply standard under § 727(a)(6) contrasts with

---

[33] *Standiferd v. United States Trustee (In re Staniferd)*, 641 F.3d 1209, 1212 (10th Cir. 2011) (*quoting Jordan v. United States (In re Jordan)*, 521 F.3d 430, 433 (4th Cir. 2008)).

[34] *Jordan*, 521 F.3d at 433.

the standard for civil contempt, under which a failure to comply because of inability, mistake, or inadvertence is sufficient to constitute contempt.[35]

The Trustee contends Debtor's discharge should be revoked because he failed to comply with orders to appear for his Rule 2004 examination and for the hearing on the show cause order. But as to each of these orders, Debtor responded before the scheduled appearance by letter to either counsel or the Court explaining his position. As to the first notice of the Rule 2004 examination scheduled for November 17, 2009, Debtor stated he had a previously scheduled medical appointment, and the examination was rescheduled for November 23, 2009. On November 18, 2009, well before the rescheduled examination, by letter to counsel for the Trustee, Debtor stated his reasons for nonattendance. Likewise, Debtor explained to the Court his reasons for not appearing at the show cause hearing, which included a lack of funds to make the trip to Wichita from Texas.

Thus the Trustee has shown that Debtor received the orders in question. Debtor has explained his reasons for noncompliance. Each of these reasons was presented well before or on the date of the scheduled appearance. This is not a case where a debtor willfully did not respond to an order to appear.

Although the Court questions whether Debtor's reasons for noncompliance were presented in good faith, since the arbitrary failure to appear would be consistent with

---

[35] *Morris*, 2008 WL 819296 at *8.

histhe pattern of disdain for the bankruptcy process he displayed in his testimony and his initial insistence that the Trustee provide funds for his appearance at his Rule 2004 examination, the Trustee has not presented evidence from which the Court can conclude they were pretexts. The Trustee argues that since Debtor traveled to attend unspecified hearings in the adversary actions in which his ex-wife and mother were also defendants, the Court should reject lack of funds as a sufficient reason for his failure to attend the show cause hearing. But the Trustee offered no evidence in support of this position, so the Court does not know the source of the funds Debtor used to pay for such attendance, or if Debtor's circumstances changed between his failure to attend in late 2009 and early 2010, and the unspecified dates on which he did appear.

Revocation of discharge is an extraordinary remedy.[36] The applicable statues must be construed strictly against the Trustee and liberally in favor of Debtor.[37] The Court finds that the Trustee has not demonstrated that Debtor's discharge should be revoked for refusal to obey orders of the Court.

**CONCLUSION.**

For the foregoing reasons, the Court grants the Trustee's complaint to revoke Debtor's discharge under § 727(d)(1) based upon commission of the actions proscribed by § 727(a)(4)(A), making a false oath or account in connection with the case. The Court finds that the Trustee has not sustained his burden of proof as to the allegations that

---

[36] *Jordan*, 521 F.3d at 433.

[37] *Id.*

Debtor's discharge should be revoked under § 727(d)(1) based upon § 727(a)(2), fraudulent transfer or concealment of property, and § 727(d)(3) based upon § 727(a)(6), refusal to obey an order of the Court.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure, which makes Rule 52(a) of the Federal Rules of  Civil Procedure applicable to this proceeding.  A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 7058, which makes Federal Rule of Civil Procedure 58 applicable to this proceeding.

**IT IS SO ORDERED.**

# # #